# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **DAVID THOMAS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-04-4479** |
| | § | |
| **WILLIE G'S POST OAK, INC., and** | § | |
| **LANDRY'S RESTAURANTS, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM & ORDER

Pending before the Court are Defendants' Motion for Final Summary Judgment (Dkt. #17), Defendants' Motion to File Documents Under Seal (Dkt. #36), Defendants' Motion to Strike Plaintiff's Summary Judgment Evidence (Dkt. ## 39 & 40), and Plaintiff's Motion to Strike Defendants' Reply Brief (Dkt. #41).  Defendants' Motion to File Documents Under Seal is GRANTED as unopposed.  Having considered the remaining motions, the parties' arguments, and the applicable law, the Court is of the opinion that Defendants' Motion for Final Summary Judgment should be GRANTED in part and DENIED in part, Defendants' Motion to Strike Plaintiff's Summary Judgment Evidence should be GRANTED in part and DENIED in part (Dkt. ## 39 & 40), and Plaintiff's Motion to Strike Defendants' Reply Brief should be DENIED (Dkt. #41).

### Factual and Procedural Background

Brenner's Steakhouse ("Brenner's") is a restaurant in Houston, Texas that is owned by Willie G's Post Oak, Inc ("Willie G's).  Eric F. Kresse ("Kresse") is the manager of Brenner's.  Plaintiff interviewed with Kresse in late May of 2003, and was ultimately offered a position as a waiter, which he accepted.  The employment application filled out by Plaintiff indicated the position that he was applying for was with Landry's Restaurants, Inc. ("Landry's").  Landry's is apparently the

parent company of Willie G's.  As part of the application, Plaintiff agreed "to abide by all policies and standards of Landry's Restaurants."[1]  Additionally, Plaintiff was provided a Landry's Employee Handbook for which he was required to sign an acknowledgment form.[2]  The form indicates that Plaintiff entered into an "employment relationship with Landry's . . . ."[3]

During his time at Brenner's, Plaintiff was the subject of several disciplinary action reports. First, Plaintiff was placed in a 90 probationary period after he gave and then rescinded his two-weeks notice of resignation.[4]  Plaintiff was also warned on separate occasions for an unexcused absence and failure to follow proper procedure as an on call server.[5]  Finally, Plaintiff was terminated on November 20, 2003.  According to the disciplinary action report, Plaintiff exhibited unprofessional behavior toward a manager.[6]  In particular, after reporting to work four minutes later than his scheduled starting time, Plaintiff had a confrontation with another manager Stewart Snow ("Snow").  Although the parties disagree as to several aspects of the confrontation, it appears undisputed that Snow told Plaintiff at some point during the discussion that Plaintiff was fired.  It is also undisputed that Kresse signed the Landry's disciplinary form that officially reflects Plaintiff's termination.[7]

---

[1]Dkt. #35, Ex. 9.

[2]*Id*. at Ex. 12.

[3]*Id.*

[4]Dkt. #17, Ex. D.

[5]*Id*. at Ex. F, Ex. G.

[6]*Id*. at H

[7]*Id.*

Plaintiff filed this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on October 26, 2004 in the 333rd Judicial District Court of Harris County, Texas.  In his Petition, Plaintiff alleges that he was subjected to quid pro quo sexual harassment by Kresse and that Kresse's conduct toward him constituted a hostile work environment.  In particular, Plaintiff alleges that Kresse inappropriately touched him on numerous occasions and also that Kresse "came on" to him and "asked him out."  According to Plaintiff, he met with Kresse to complain about Kresse's conduct, and was told to report the complaint to the corporate office for investigation.  After his complaints, Plaintiff alleges that he suffered retaliation that ultimately resulted in his termination.  After he was terminated, Plaintiff timely filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC"), which issued Plaintiff a Notice of Suit Rights letter on September 20, 2004.

Defendants removed the lawsuit to this Court on November 24, 2004.[8]  Defendants filed their motion seeking summary judgment on all of Plaintiff's claims on October 21, 2005.  After receiving two extensions of the response deadline, Plaintiff filed his response to Defendants' motion on December 30, 2005, to which Defendants filed a reply on January 6, 2006.

## Discussion

### I.     Motions to Strike

First, Plaintiff moves to strike certain evidentiary attachments that were filed with Defendants' reply to his summary judgment response.  Plaintiff complains that the additional evidence should be stricken because it was not attached to Defendants' original motion and Defendants did not seek leave before filing the evidence with their reply brief.  Defendants contend

---

[8]Dkt. #1.

3

that the additional evidence was submitted in direct response to Plaintiff's summary judgment response.  The Court finds that the evidence should not be stricken.  Initially, the Court agrees that the additional submissions are responsive in nature and therefore are appropriately presented in a reply brief.  Second, the Court notes that Plaintiff has now had time to and in fact did respond to the additional evidence submitted by Defendants.[9]  Under the circumstances, the Court finds that Plaintiff's motion must be denied.

The Court now turns to Defendants' motion to strike.  Following Plaintiff's response to their summary judgment motion, Defendants objected to and moved to strike portions of Plaintiff's summary judgment evidence because those portions of the submitted evidence constitute: (1) conclusory statements and legal conclusions, (2) a contradictory/sham declaration and contradictory/sham affidavit testimony, which are (3) not founded on the personal knowledge of the declarant or affiant.  The Court will address each portion of the disputed evidence.

### A.      Prior Conflicting Testimony

Defendants object to specific portions of Plaintiff's declaration because Defendants maintain those portions impermissibly contradict Plaintiff's deposition testimony in an attempt to manufacture a fact issue.  Defendants first dispute Plaintiff's declaration statements concerning his relationship with Snow during the time period after Plaintiff complained of Kresse's harassment.  During his deposition, Plaintiff indicated that he and Snow had a "good relationship" and that "nothing [stood] out" about his relationship with Snow.  In his declaration, however, Plaintiff states that he is confident that Snow "was aware of [his] sexual harassment complaint" because Snow "began demonstrating a different attitude with [Plaintiff] and the tone in his voice was hostile whenever he

---

[9]*See* Dkt. # 72.

spoke to [Plaintiff]."  The Court agrees that the declaration is materially different from Plaintiff's deposition testimony in the sense that Plaintiff states that Snow's voice was hostile whenever he spoke to Plaintiff.  The Court finds that this directly contradicts Plaintiff's prior testimony. Therefore, the Court will not consider this testimony in deciding whether a fact issue exists as to Plaintiff's claims.  However, the Court concludes that Plaintiff's statement that Snow demonstrated a different attitude toward him does not contradict Plaintiff's deposition testimony.  Having read the relevant portions of the declaration and the deposition transcript, the Court is satisfied that this specific area was not discussed in the prior testimony.

Defendants also object to paragraphs 8 and 9 of Plaintiff's declaration on the grounds that the declaration contradicts Plaintiff's prior deposition testimony with respect to the chronological order of certain events.  Having read the deposition testimony, Plaintiff's declaration, and Plaintiff's response, the Court is satisfied that the sequence of events is not a disputed matter.  That is, it appears undisputed that Plaintiff raised the alleged harassment with Kresse in a disciplinary meeting that arose from Plaintiff's absence the day before and for which Plaintiff signed a Disciplinary Action Report several days later.  Satisfied that the factual circumstances are not in dispute, the Court finds no cause to strike this portion of the submitted evidence.

**B.     Personal Knowledge**

Next, Defendants argue that certain portions of Plaintiff's testimony is not based on personal knowledge.  In particular, Defendants object to two statements on the grounds that they merely represent Plaintiff's beliefs.  For example, Plaintiff states that he is "confident that if [he] had not complained of the sexual harassment prior to this incident, [he] would not have been written up for it because [he] had documentation proving [his] reason for not [being present]" and others in similar

situations had not been written up.  The Court finds that the statements should not be stricken.  To the extent that Plaintiff merely states he is confident in a particular fact, the Court notes that this represents no evidence at all.  However, when Plaintiff's belief or confidence in a particular fact is supported by other evidence, the Court is allowed and, indeed, must draw certain inferences that could lead to similar conclusions as those expressed by Plaintiff.

Defendants also contest several paragraphs in Plaintiff's declaration that contain statements about various other employees allegedly violating attendance policies.  Defendants complain that Plaintiff could not name these employees in his deposition without "finding out."  Additionally, Defendants argue that Plaintiff could not have personal knowledge regarding whether the named employees were reprimanded.  Thus, Defendants move for these paragraphs to be stricken.  In response, Plaintiff submits that he knew the employees who had violated the attendance at the time of his deposition, but was unable to recall their specific names without an employee list, which was unavailable.  After receiving an employee list after the deposition, Plaintiff explains that he was able to accurately identify each of the individuals listed in his declaration.  The Court concludes that the disputed portions of the declaration should not be stricken.  After reviewing the deposition transcript, the Court is satisfied that Plaintiff's declaration can be characterized as clarifying his previous testimony with specific names and incidents.  Although Defendants disagree, Plaintiff unequivocally states that he personally witnessed these individuals arriving late for work.  Thus, the Court finds that the statements are appropriately considered for summary judgment.

### C.    Russ's Declaration and Exhibit

Finally, Defendants contest certain sections of a declaration made by John Russ, another former employee of Brenner's who was allegedly harassed by Kresse.  Defendants maintain that

6

these disputed sections contain "conclusory legal conclusions."  For example, Russ states that he was "discriminated against because of [his] sex and sexually harassed (hostile work environment and quid pro quo sexual harassment) and retaliated against in violation of Title VII . . . ."  The Court agrees that this statement is inadmissible and therefore should be stricken.  Defendants also object to an exhibit purportedly prepared by Russ on the basis that its contents constitute inadmissible hearsay.  Without specifically resolving the issue of its admissibility, the Court concludes that consideration of the disputed exhibit is unnecessary for resolution of Defendants' summary judgment motion.  That is, the Court will not consider the disputed exhibit in resolving the issues involved in summary judgment.

## II.  Motion for Summary Judgment

Defendants have moved for final summary judgment as to all claims asserted by Plaintiff. The Court will consider each claim below.

### A.  Standard of Review

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required.  *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001); *see also Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and

denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### B.     Employer Status

Defendants contend that summary judgment is proper as to Landry's because Landry's was not Plaintiff's employer for Title VII purposes.  In particular, Defendants dispute that Landry's and Willie G's represent an integrated business enterprise.  In response, Plaintiff notes that he completed a Landry's employment application and received a Landry's employee handbook.  Plaintiff further notes that the disciplinary action forms used in his reprimands, as well as his termination, contain a Landry's heading.  According to Plaintiff, these facts render summary judgment improper.  The Court agrees.

The Fifth Circuit has explained that "the term 'employer' as used in Title VII of the Civil Rights Act was meant to be liberally construed." *Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983).  In particular, the court has held that for Title VII purposes "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer.  *Id.* at 404.  In considering whether such an integrated enterprise exists, courts have considered the following factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control.  *Id.*  Of these factors, whether two entities maintain centralized control of labor relations has been considered the most important in resolving the issue.  *Id.*

As Plaintiff points out, the Landry's corporate name and logo is found at the heading of virtually every document associated with Plaintiff's employment, including his employment

9

application, employee handbook acknowledgment form, and disciplinary forms.  As part of these individual forms, Plaintiff agreed "to abide by all policies and standards of Landry's Restaurants,"[10] and also acknowledged at Landry's insistence that he was entering into an "employment relationship with Landry's . . . ."[11]  Additionally, it appears that Plaintiff was directed by Kresse and did in fact complain about the alleged sexual harassment to Landry's, which presumably was the entity that investigated Plaintiff's complaint.[12]  Given the degree to which Landry's and Willie G's appear related in the foregoing documents, and viewing the evidence in the light most favorable to Plaintiff, the Court finds that fact issues remain as to whether the two companies represent an integrated enterprise.  As a result, summary judgment is improper as to this issue.

C.     **Harassment**

Defendants also seeks summary judgment as to Plaintiff's claims that he was sexually harassed in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*  To make a prima facie showing of sexual harassment by a superior, a claimant must at least raise a fact issue on the following four elements: (1) he belongs to a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; and (4) the harassment affected a term, condition, or privilege of employment.  *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).  In order to demonstrate that the harassment affected a term, condition, or privilege of employment, Plaintiff must establish: (1) that tangible employment action was taken against him because of his sex, or (2) that a supervisor discriminated against him because

---

[10]Dkt. #35, Ex. 9.

[11]*Id*. at Ex. 12.

[12]*Id*. at Plaintiff's Depo., pp. 82-83.

of his sex and created a hostile work environment.  *See Casiano v. AT&T Corp.*, 213 F.3d 278, 2834-84 (5th Cir. 2000).  If a plaintiff can show that he suffered a "tangible employment action" as a result of the harassment, then the claim is evaluated as one which falls within the category of a "quid pro quo" law suit.  *Id*.  If, however, there has been no tangible employment action, then the claim is viewed as one for a "hostile environment."  *Id*.  In his petition, Plaintiff alleges both *quid pro quo* and hostile work environment sexual harassment.

### 1.    Quid Pro Quo

To establish *quid pro quo* sexual harassment, a plaintiff must demonstrate the occurrence of a tangible employment action.  *Id*.  The Supreme Court has explained that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998).  Once established, "the court must then determine whether the tangible employment action suffered by the employee resulted from his acceptance or rejection of his supervisor's alleged sexual harassment."  *Casiano*, 213 F.3d at 283 (citing *Ellerth*, 524 U.S. at 753-54).  Defendants note that Plaintiff's only potentially qualifying tangible employment action is his termination.  Defendants, however, contend that Plaintiff cannot demonstrate a fact issue regarding whether his termination resulted from Plaintiff's acceptance or rejection of Kresse's alleged sexual harassment.  The Court agrees.

First, the Court notes that Plaintiff has not responded to Defendants' request for summary judgment as to the *quid pro quo* claim.  Indeed, the summary judgment record does not appear to reflect any evidence linking Plaintiff's termination to Plaintiff's acceptance or rejection of the alleged sexual advances.  Although Plaintiff does allege that the termination is linked to his

complaint about the harassment, this allegation is correctly framed in terms of a retaliation claim, rather than a *quid pro quo*.  Accordingly, the Court finds that summary judgment on this issue is appropriate.

### 2.    Hostile Work Environment

The Court now turns to the hostile work environment claim.  Defendants contest the third and fourth elements of Plaintiff's prima facie case— that the harassment complained of was based on sex and that the harassment affected a term, condition, or privilege of employment.  *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).  There are three methods by which a plaintiff alleging same-sex sexual harassment can show that he was harassed based on sex: (1) he can show that the alleged harasser made "explicit or implicit proposals of sexual activity" and provide "credible evidence that the harasser was homosexual; (2) he can demonstrate that the harasser was "motivated by general hostility to the presence of [members of the same sex] in the workplace; and (3) third, he may "offer direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998).

The Court finds that fact issues exist as to the first method of demonstrating harassment based on sex.  Although Plaintiff does not necessarily provide explicit proposals of sexual activity, several of Kresse's alleged comments to Plaintiff suggest implicit proposals sufficient to survive summary judgment.  In particular, the Court notes that Kresse's alleged physical contact with Plaintiff while they were alone could be construed by a fact finder as an implicit proposal of sexual activity.  Both of these alleged incidents involved Kresse allegedly grabbing and squeezing Plaintiff's buttocks, with Kresse allegedly "running his finger into the crack of [Plaintiff]'s

12

butt[ocks]" on one of these occasions.[13]  Viewing the evidence in the light most favorable to Plaintiff, which the Court must do in the summary judgment context, the Court concludes that it would be a permissible inference for a fact finder to conclude that Kresse's alleged contact was calculated to measure Plaintiff's willingness to engage in possible sexual activity.  Additionally, Plaintiff has provided testimony regarding an incident between Kresse and Plaintiff at a nearby bar that could be construed as an implicit proposal for sexual activity.  Specifically, Plaintiff alleges that while at the bar Kresse approached him and asked him "if he wanted to go somewhere."  In light of the alleged physical contact that had previously occurred, this statement might also be construed as an inappropriate proposal.

The Court also concludes that there is sufficient evidence at this stage to establish the alleged harasser's homosexuality.  First, most of the evidence outlined above to support harassment based on sex would also permit inferences about Kresse's sexual orientation.  Plaintiff has testified regarding comments allegedly made by Kresse in reference to possible homosexual activity during Kresse's time in the Navy.  Furthermore, Plaintiff has submitted Russ's declaration, which also contains Russ's descriptions of Kresse's conduct toward him that could be perceived as demonstrating a homosexual orientation.  While all of this evidence may certainly be refuted and contested at trial, the Court is bound to draw all permissible inferences in Plaintiff's favor in considering whether summary judgment is proper.  Having done so, the Court is satisfied that Plaintiff has at least established a fact issue regarding Kresse's possible homosexuality.

In order to satisfy the fourth element, Plaintiff must show that the alleged harassment was either severe or pervasive.  *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 483 (5th Cir. 2002);

---

[13]Dkt. #35, p. 10.

*Casiano*, 213 F.3d at 284.  The Fifth Circuit has explained that "to be actionable under Title VII, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so."  *La Day*, 302 F.3d at 482 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *Butler v. Ysleta I.S.D.*, 161 F.3d 263, 269 (5th Cir. 1998)) (brackets omitted).  Because Plaintiff has clearly indicated that he was offended by Kresse's alleged conduct and considered it sexual harassment,[14] the remaining question, then, is whether a reasonable person in Plaintiff's position would have found the environment "hostile or abusive."  *See La Day*, 302 F.3d at 483 (citing *Oncale*, 523 U.S. at 81; *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

To make this objective determination, a fact finder must consider all of the circumstances presented from any source.  *See Harris*, 510 U.S. at 23; *La Day*, 302 F.3d at 482.  The relevant circumstances may include the frequency of the alleged conduct; the severity of the alleged conduct; the degree to which the conduct is physically threatening or humiliating; and the degree to which the conduct interferes unreasonably with an employee's work performance. *Harris*, 510 U.S. at 23; *La Day*, 302 F.3d at 482; *Butler*, 161 F.3d at 269.  To "survive summary judgment on a hostile environment claim," Plaintiff must show that these factors combine in a way that is either "severe or pervasive. [He] does not have to prove both." *La Day*, 302 F.3d at 483 (internal quotations omitted).  The Court believes that Plaintiff has met his burden.

Plaintiff describes in detail in his declaration and deposition testimony the alleged physical contact initiated by Kresse.  The alleged contact with Plaintiff's buttocks occurred on two separate

---

[14]*Id*. at Plaintiff's Decl., ¶ 5 (stating that he "was clearly offended by [Kresse's] conduct.").

occasions, with the last incident allegedly escalating to Kresse "poking his fingers into the crack of

Thomas's butt[ocks]."[15]  Apart from these incidents, Plaintiff describes "four or five" other incidents

of physical contact by Kresse, which allegedly occurred before the other incidents.  According to

Plaintiff,

> Kresse would come up to me grab my arm and squeeze it, like he was feeling my
> muscle—like a woman would do with her boyfriend to indicate that she thought he
> was strong.  Other times he would come up behind me and squeeze my shoulders and
> rub his hands on the top of my back like he was giving me a massage.  It was weird
> and uncomfortable.  I tried to move away as quickly as possible without offending
> him because he was my manager.[16]

Defendants dispute that these earlier incidents are probative of a hostile work environment because

Plaintiff did not consider them harassing in nature at the time.  The Court, however, finds that such

incidents, if proven, would represent additional evidence in support of Plaintiff's claim.  The fact

that Plaintiff might have become more aware of the nature of certain contact after it occurred does

not change the possibility that Plaintiff was troubled by the alleged contact once Kresse's alleged

intentions were revealed.  Moreover, Plaintiff unequivocally states in his declaration that he thought

the contact was "weird and uncomfortable" at the time it occurred, and in fact, sought to avoid it.

Under all of these circumstances, the Court concludes that summary judgment would only be

possible by resolving several disputed fact issues and evaluating the credibility of certain witnesses.

Because these tasks are reserved specifically for the jury, the Court finds that summary judgment

is inappropriate.

---

[15]Dkt. #35, p. 6.

[16]Dkt #35, Thomas Decl. at ¶ 4.

D.      **Retaliation**

Finally, Defendants seek summary judgment as to Plaintiff's claim that he was unlawfully retaliated against for complaining about the alleged sexual harassment by Kresse.  Defendants argue that Plaintiff was terminated as a result of two specific legitimate, non-discriminatory reasons—Plaintiff's repeated violations of the attendance policy and Plaintiff's unprofessional conduct toward a manager.  According to Defendants, Plaintiff has offered no evidence to show that these reasons are false, or that Plaintiff's termination was causally linked in any way to his harassment complaint.  In response, Plaintiff disputes that the reasons offered by Defendants are the real reasons for his termination.  First, Plaintiff asserts that other employees also repeatedly violated the attendance policy without suffering termination, and that such disparate treatment casts doubt upon Defendants' justification.  Second, Plaintiff contends that he did not exhibit any unprofessional conduct toward Snow until after Snow had terminated him.

In order to prove a retaliation claim under Title VII, a plaintiff must establish that (1) the employee has engaged in protected activity, (2) the employer took adverse employment action against the employee, and (3) a causal connection exists between that protected activity and the adverse employment action." *Burger v. Cent. Apartment Mgmt., Inc*., 168 F.3d 875, 878 (5th Cir.1999).  Under this Court's view of current Fifth Circuit precedent, once a plaintiff sets forth this prima facie case,

> [T]he defendant then must articulate a legitimate, non-discriminatory reason for its decision ···; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence ··· either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir.2004) (internal quotation marks and citations omitted).[17]  In this case, the only disputed issue regarding Plaintiff's prima facie case is whether a causal connection exists between Plaintiff's sexual harassment complaint and his termination.  The Court finds that facts issues exist as to the existence of a casual connection, and further that fact issues preclude summary judgment on Plaintiff's claim generally.

Initially, the Court notes the proximity between Plaintiff's protected activity and his termination.  It appears undisputed that Plaintiff's termination occurred during the month following his complaint of the sexual harassment.  "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)) (emphasis omitted).  In fact, the Fifth Circuit has noted that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." Id. (citing *Weeks v. NationsBank, N.A.*, No. CIV. A 3:98-CV-1352M, 2000 WL 341257, at *3 (N.D. Tex. 2000)).  In this case, Plaintiff has also alleged that both Kresse and Snow treated him differently during the time period after the complaint.  Specifically, Plaintiff indicates that Kresse stopped speaking to him, treated him unfairly and

---

[17]Although the Fifth Circuit's decision in *Rachid* involved an age discrimination claim under ADEA, several courts have since concluded that this "modified McDonnell Douglas approach" articulated in *Rachid* also applies to retaliation claims under Title VII.  *See, e.g.*, *Warren v. Terex Corp.*, 328 F. Supp. 2d 641, 646 (N.D. Miss. 2004) (applying mixed-motive analysis to retaliation claim); *Bergen v. Continental Cas. Co.*, 3:04-CV-0428-H, 2005 WL 292426, at *4 (N.D. Tex. Feb. 7, 2005) (same); *Cones v. Duke Energy Corp.*, 367 F. Supp. 2d 1092, 1100 (S.D. Tex. 2005) (same).  This Court concurs with the view expressed by these courts.  *See, e.g.*, *Block v. Kelly Services, Inc.*, H-04-CV-2326, 2005 WL 2647970, at *4 (S.D. Tex. October 14, 2005).

mockingly, and denied him the opportunity to work full time.  With Snow, the admissible evidence is that Snow demonstrated a different attitude toward Plaintiff after the complaint, which, however slight, could be viewed as evidence of Snow's knowledge that Plaintiff had complained.  Viewed as a whole, the Court concludes that Plaintiff has satisfied his prima facie case.

The Court also finds that fact issues exist as to the truthfulness of Defendants' legitimate, non-discriminatory reasons.  As for the alleged unprofessional conduct toward Snow, Plaintiff does not dispute that this conduct occurred.  Rather, Plaintiff submits that he engaged in unprofessional conduct with Snow only after he was terminated by Snow for being four minutes late.  As such, Plaintiff asserts that this offensive conduct could not have resulted in his termination.  Moreover, there is some dispute as to whether Snow made the final decision to terminate Plaintiff.   In particular, the Court notes that it was Kresse who signed the termination form after allegedly consulting with his boss.  Finally, Plaintiff has testified that other employees regularly violated the attendance policy and were not terminated.  Although Defendants have submitted disciplinary reports showing that some of these employees were in fact reprimanded, it is not clear that the forms submitted by Defendants account for all of the incidents about which Plaintiff appears to have knowledge.  Additionally, the fact that certain employees were reprimanded for violations of the attendance policy does not necessarily establish consistency with Plaintiff's treatment because he was terminated.  All of these issues are ripe for exploration with witnesses in the presence of a jury, which can evaluate their credibility and resolve these disputed facts.  To rule otherwise at this stage would necessarily involve this Court's usurpation of the jury's important role—a result forbidden by precedent and tradition.  As such, summary judgment on this issue is inappropriate.

**Conclusion**

For the foregoing reasons, Defendants' Motion for Final Summary Judgment is GRANTED in part and DENIED in part, Defendants' Motion to Strike Plaintiff's Summary Judgment Evidence is GRANTED in part and DENIED in part, and Plaintiff's Motion to Strike Defendants' Reply Brief is DENIED.

It is so ORDERED.

Signed this 25th day of April, 2006.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE